959 P.2d 651 (1998)
135 Wash.2d 820
ESCA CORPORATION, a Washington corporation, Respondent,
Amelinc Corporation, a Delaware corporation, Plaintiff,
and
Seattle-First National Bank, a national banking association, Respondent,
v.
KPMG PEAT MARWICK, a New York State general partnership, Petitioner.
No. 65818-8.
Supreme Court of Washington, En Banc.
Argued May 20, 1998.
Decided July 23, 1998.
*652 Bogle & Gates, Evan Schwab, Lucy Isaki, Michael Mirande, Margarita Latsinova, Seattle, for Petitioner.
Bruce Johnson, Eric Stahl, Jerry Stehlik, Seattle, for Respondent.
JOHNSON, Justice.
This case involves a claim by a bank against an accounting firm based on faulty information prepared by the accounting firm which was relied upon by the bank to its detriment. KPMG Peat Marwick (KPMG), an accounting firm, seeks review of a Court of Appeals decision affirming the jury verdict awarding damages in favor of Seattle-First National Bank (Seafirst). The Court of Appeals affirmed the jury verdict, holding negligence by the plaintiff does not bar recovery in a cause of action for negligent misrepresentation. ESCA Corp. v. KPMG Peat Marwick, 86 Wash.App. 628, 939 P.2d 1228 (1997). We are asked to determine whether comparative fault principles apply to claims of negligent misrepresentation. We conclude they do and affirm.

FACTS
ESCA Corporation (ESCA), a software company, hired KPMG, an accounting firm, to audit its 1988-1989 financial statements. KPMG provided ESCA with a preliminary draft audit in January 1990. Each page of the preliminary draft audit was marked "Preliminary draft, for discussion purposes only" and, according to KPMG, was prepared for ESCA's benefit only. A final draft audit was made available to ESCA in February 1990. Both audits erroneously included a contingent purchase order from Westinghouse Systems Limited worth approximately $2.5 million as part of ESCA's net income for the year. As a result of this accounting error, the audit showed record earnings exceeding $1,400,000. The audit should not have included the purchase order as earnings, and the financial statement should have shown ESCA suffered a loss in excess of $1 million.
Seafirst was involved in a loan agreement with ESCA. The loan had two components: (1) a term loan for $2 million for the purchase of capital equipment, and (2) a revolving line of credit authorized for $6 million which was secured by ESCA's accounts receivable and work in progress. In January 1990, ESCA applied for an increase in the revolving line of credit. Seafirst reviewed material provided by ESCA (information that *653 included KPMG's preliminary draft of the 1989 audit) to confirm the accuracy of ESCA's own financial records. On February 1, 1990, Seafirst increased ESCA's borrowing authority by $2 million. In addition to increasing the revolving line of credit to $8 million, in March 1990 Seafirst approved and renewed ESCA's entire loan package after using KPMG's final audited financial statement to confirm ESCA's financial position.
Just prior to the renewal of the loan, ESCA provided Seafirst with ESCA's financial statements for the first fiscal quarter of 1990 which revealed ESCA had experienced a large loss and was not in compliance with the loan agreement's $5 million net worth requirement. ESCA also informed Seafirst that the company might not meet its revenue plan for 1990. Despite the bleak financial information, on March 23, 1990 Seafirst waived the loan's minimum net worth requirement until April 30, 1990, at which time ESCA would be required to comply with the terms of the loan.
On March 26, 1990, Seafirst downgraded ESCA's loan. Seafirst placed ESCA on the "special attention borrower report" because ESCA was "unable to generate revenues from contract bookings as originally planned."
Seafirst did not call or renegotiate the loan. In fact, Seafirst advanced additional funds to ESCA. Seafirst advanced the additional money because it knew ESCA had a $3 million convertible debenture available to cover cash flow needs. Seafirst believed this convertible debenture provided sufficient security for its loans.
In the end, ESCA was unable to comply with the terms of the loan agreement. On June 1, 1990, Seafirst transferred the account to its troubled loan department and refused to advance ESCA additional funds. Seafirst did not foreclose the loan, but negotiated a sale of ESCA's debt to Cegelec, ESCA's major shareholder, for $5.1 million. This sale resulted in a $5 million loss to Seafirst.
Seafirst sued KPMG for negligent misrepresentation. KPMG countered that Seafirst was contributorily negligent either in relying upon KPMG's negligent audit or in failing to mitigate damages. During trial, KPMG moved for partial summary judgment and argued that Seafirst could not justifiably rely upon the preliminary draft audit as a matter of law. The trial court agreed and dismissed that portion of the action, leaving Seafirst with one cause of action for negligent misrepresentation-based on the final audit.
KPMG proposed a jury instruction stating that contributory negligence in relying upon misinformation is a complete defense to negligent misrepresentation, that KPMG has the burden of proving Seafirst's negligence, and that if the defense is proved, the verdict should be for KPMG on Seafirst's claim. The trial court rejected the proposed instruction, and instead opted to use Seafirst's jury instruction on the elements of negligent misrepresentation. At KPMG's request, the trial court gave a comparative negligence instruction. The jury found KPMG negligent in preparing the audit, but found Seafirst 60 percent negligent in causing its own damage.
KPMG moved for summary judgment as a matter of law, arguing the finding of contributory negligence barred any recovery by Seafirst. The trial court denied KPMG's motion and entered judgment on the verdict. The Court of Appeals affirmed, holding that Washington's uniform comparative fault statute, RCW 4.22.005, applies to negligent misrepresentation claims. The Court of Appeals also found that the trial court properly granted partial summary judgment to KPMG on Seafirst's claim of justifiable reliance on the preliminary draft audit. ESCA Corp., 86 Wash.App. at 642, 939 P.2d 1228. KPMG seeks review of the comparative negligence issue, and Seafirst seeks review of the trial court's grant of summary judgment on the preliminary draft audit.

ANALYSIS
The relevant issues to our resolution of this case are:
1. Does RCW 4.22.005, Washington's uniform comparative fault statute, apply to claims of negligent misrepresentation?
2. Did the trial court err in finding that Seafirst could not justifiably rely upon the preliminary draft audit as a matter of law?
*654 Washington has adopted the Restatement (Second) of Torts with respect to the elements of negligent misrepresentation. Schaaf v. Highfield, 127 Wash.2d 17, 22, 896 P.2d 665 (1995); Condor Enters., Inc. v. Boise Cascade Corp., 71 Wash.App. 48, 52, 856 P.2d 713 (1993). The Restatement (Second) of Torts § 552(1) (1977) describes negligent misrepresentation as:
One who, in the course of his business, profession or employment, or in any other transaction in which he has a pecuniary interest, supplies false information for the guidance of others in their business transactions, is subject to liability for pecuniary loss caused to them by their justifiable reliance upon the information, if he fails to exercise reasonable care or competence in obtaining or communicating the information.
A plaintiff must prove he or she justifiably relied upon the information negligently supplied by the defendant. Condor, 71 Wash. App. at 52, 856 P.2d 713. The Restatement equates justifiable reliance with a lack of contributory negligence by the plaintiff. "The recipient of a negligent misrepresentation is barred from recovery for pecuniary loss suffered in reliance upon it if he is negligent in so relying." Restatement (Second) of Torts § 552A (1977). The comments to § 552A reinforce the position that contributory negligence by a plaintiff bars recovery in an action for negligent misrepresentation.
But when the misrepresentation is not fraudulent but only negligent, the action is founded solely upon negligence, and the ordinary rules as to negligence liability apply. Therefore the contributory negligence of the plaintiff in relying upon the misrepresentation will bar his recovery.
Restatement (Second) of Torts § 552A cmt. a (1977).
Based on § 552A, KPMG proposed the following jury instruction:
With respect to Seafirst's claim for negligent misrepresentation, the law provides that it is a complete defense if Seafirst was negligent in relying on information supplied by Peat Marwick.
Peat Marwick has the burden of proving that Seafirst was negligent in relying on information supplied by Peat Marwick.
If you find from consideration of all the evidence that this affirmative defense has been proved, your verdict should be for Peat Marwick on Seafirst's claim.
Clerk's Papers at 1323. The trial court rejected the instruction and the accompanying verdict form. Instead, the trial court accepted Seafirst's negligent misrepresentation instruction, which stated:
Seafirst has asserted a claim against KPMG for negligent misrepresentation. To prevail on its claim, Seafirst has the burden of proving the following propositions:
(1) That KPMG supplied information for the guidance of others in their business transactions that was false; and
(2) That KPMG knew or should have known that the information was supplied to guide Seafirst in business transactions; and
(3) That KPMG was negligent in obtaining or communicating false information; and
(4) That Seafirst relied on the false information supplied by KPMG; and
(5) That Seafirst's reliance on the false information supplied by KPMG was justified (that is, that reliance was reasonable under the surrounding circumstances); and
(6) That the false information was the proximate cause of damages to Seafirst.
If you find from consideration of all the evidence that Seafirst has proved each of these propositions by clear, cogent, and convincing evidence, your verdict should be for Seafirst on its claim against KPMG.
On the other hand, if any of these propositions has not been proved, your verdict should be for KPMG on Seafirst's claim.
Clerk's Papers at 1359 (Jury Instruction 17).
We hold the trial court properly instructed the jury, and did not err in denying KPMG's proposed instruction. In this case, the instructions given by the trial judge required Seafirst to prove that its "reliance on the false information supplied by KPMG *655 was justified (that is, that reliance was reasonable under the surrounding circumstances)... by clear, cogent, and convincing evidence." Clerk's Papers at 1359. Negligence is the failure to act reasonably under the circumstances. Gordon v. Deer Park Sch. Dist. No. 414, 71 Wash.2d 119, 122, 426 P.2d 824 (1967); Restatement (Second) of Torts § 282 (1965). Whether a party justifiably relied upon a misrepresentation is an issue of fact. Barnes v. Cornerstone Invs., Inc., 54 Wash.App. 474, 478, 773 P.2d 884 (1989). The jury's determination that Seafirst's reliance on KPMG's final audit was "reasonable under the circumstances" necessarily means that Seafirst's reliance was not negligent. We accept the jury's finding of justifiable reliance by Seafirst and, accordingly, reject KPMG's argument that Seafirst's negligent misrepresentation claim is barred.
Because the jury found Seafirst 60 percent negligent in causing its own damage, KPMG argues this finding must, as a matter of law, mean Seafirst's reliance was not justified. KPMG confuses the issues of justifiable reliance (the right to recover) with damage (the proper amount of recovery). KPMG relies on Condor Enters., Inc. v. Boise Cascade Corp., 71 Wash.App. 48, 856 P.2d 713 to support the argument that any negligence by the plaintiff bars a claim for negligent misrepresentation.
In Condor, the plaintiff relied on statements made by the defendant concerning the zoning of property, but made no attempt to conduct an independent investigation despite advice by plaintiff's own lawyer to do so. Condor, 71 Wash.App. at 54, 856 P.2d 713. Although the appellate court noted that the Legislature mandated comparative negligence principles apply to all claims involving fault, including actions based on negligent misrepresentation, the appellate court did not address the issue because neither party argued that the principles of comparative fault applied in the case. Condor, 71 Wash. App. at 52 n. 1, 856 P.2d 713. Instead, the appellate court applied the Restatement and Washington case law. The court held:
To date, the Washington cases also follow the Restatement view that justifiable reliance is equivalent to a lack of contributory negligence. As a result, contributory negligence is a complete bar to recovery, rather than a trigger that causes the fault of plaintiff and defendant to be compared and apportioned.
Condor, 71 Wash.App. at 52, 856 P.2d 713. The court found (1) Condor negligent in relying on the statements of the defendant; (2) Condor's negligence eliminated any claim of justifiable reliance; and (3) Condor could not recover damages because of its own negligence. Condor, 71 Wash.App. at 54, 856 P.2d 713.
Condor does not apply to the present case because the jury found Seafirst's reliance on the final audit justified (i.e., not negligent). This finding eliminates KPMG's argument that Seafirst's recovery is barred. However, as to the issue of damages, we must decide whether comparative fault principles apply.
Although the jury found Seafirst 60 percent negligent in causing its own damage, recovery is permitted because comparative fault operates to reduce a total damage award. The common law rule that contributory negligence served as a complete bar to recovery was replaced in Washington in 1973 when comparative negligence was adopted. Laws of 1973, 1st Ex.Sess., ch. 138 (codified at RCW 4.22.005, RCW 4.22.015). By adopting comparative negligence, the harsh result of denying recovery was eliminated because the plaintiff's culpability was considered in determining total damages.
Using comparative fault to reduce a damage award is supported by the language of the uniform comparative fault statute, RCW 4.22.005. The statute provides, in part:
In an action based on fault seeking to recover damages for injury or death to person or harm to property, any contributory fault chargeable to the claimant diminishes proportionately the amount awarded as compensatory damages for an injury attributable to the claimant's contributory fault, but does not bar recovery.
In enacting the statute in 1981, the Legislature intended to promote greater fairness in tort law by extending comparative fault principles "to all tort actions involving contributory *656 fault. The comparative principles will be applied whether or not the contributory fault was a bar or damage reducing factor under the prior law." Report of Senate Select Comm. on Tort and Prod. Liab. Reform, reprinted in Senate Journal, 47th Legis., Reg. Sess. 617, 634 (1981).
Contributory negligence no longer operates to bar recovery by a tort victim[1] but may affect the damages recovered. A plaintiff's negligence directly reduces plaintiff's recovery by the percentage of negligence involved. Young v. Caravan Corp., 99 Wash.2d 655, 661, 663 P.2d 834, 672 P.2d 1267 (1983); Godfrey v. State, 84 Wash.2d 959, 965, 530 P.2d 630 (1975). In Clements v. Blue Cross, 37 Wash.App. 544, 547, 682 P.2d 942 (1984), the court stated:
It is well settled that contributory negligence does not bar recovery, it only diminishes proportionally the amount of damages awarded. RCW 4.22.005. Therefore, while a plaintiff's negligence may reduce the amount of damages, perhaps even to nothing in an appropriate case, it does not preclude finding the defendant negligent.
The uniform comparative fault statute applies to any action that is (1) based on fault and (2) seeks recovery for "harm to property." The statute defines fault as "acts or omissions ... that are in any measure negligent... toward the person or property of the actor or others...." RCW 4.22.015. Fault does not include intentionally caused harm. Schmidt v. Cornerstone Invs., Inc., 115 Wash.2d 148, 161, 795 P.2d 1143 (1990). The dictionary defines property as: "2 c: something to which a person has legal title : an estate in tangible assets (as lands, goods, money)." Webster's Third New Int'l Dictionary 1818 (1986) (emphasis added). While the damage caused by KPMG's negligent misrepresentation obviously did not cause physical harm, we have held comparative negligence applies when purely economic loss has resulted. See Hizey v. Carpenter, 119 Wash.2d 251, 270, 830 P.2d 646 (1992) (financial loss based on negligent real estate appraisal); Seattle W. Indus., Inc. v. David A. Mowat Co., 110 Wash.2d 1, 9, 750 P.2d 245 (1988) (additional expenses resulting from engineering malpractice). We hold Seafirst's negligent misrepresentation claim is the type of action for which the uniform comparative fault statute applies.
This case does not require us to decide whether a plaintiff's negligence in relying on the negligent misrepresentation acts as a bar to recovery because the jury concluded the reliance was justified. We hold Seafirst's contributory negligence in causing its own damage reduces the total award proportionally.
Seafirst cross-appeals the trial court's grant of summary judgment for KPMG on the issue of whether Seafirst could prove justifiable reliance upon the preliminary draft audit. Seafirst argues the ruling was in error because the preliminary draft audit was a "representation" upon which liability could rest. Further, Seafirst argues the question of whether the reliance was justified should have been decided by the jury. Finally, Seafirst argues even if reliance upon the preliminary draft audit was negligent, the uniform comparative fault statute should have been applied, each party's negligence apportioned, and damages assessed accordingly.
A party claiming negligent misrepresentation must prove it justifiably relied upon the information negligently supplied. Schaaf, 127 Wash.2d at 22, 896 P.2d 665 (citing Restatement (Second) of Torts § 552 (1977)); Condor, 71 Wash.App. at 52, 856 P.2d 713. Although the question of whether a party justifiably relied is a question of fact, "`when reasonable minds could reach but one conclusion, questions of fact may be determined as a matter of law.'" Barnes, 54 Wash.App. at 478, 773 P.2d 884 (quoting Hartley v. State, 103 Wash.2d 768, 775, 698 P.2d 77 (1985)).
The Restatement (Second) of Torts § 552(2) (1977) limits the class of persons who can bring negligent misrepresentation claims.
Except as stated in Subsection (3), the liability stated in Subsection (1) is limited to loss suffered
*657 (a) by the person or one of a limited group of persons for whose benefit and guidance he intends to supply the information or knows that the recipient intends to supply it; and
(b) through reliance upon it in a transaction that he intends the information to influence or knows that the recipient so intends or in a substantially similar transaction.
We agree with the trial court and the Court of Appeals and find Seafirst did not justifiably rely upon the "draft" audit as a matter of law. In this case, each page of the draft audit was marked "Preliminary draft, for discussion purposes only," and was distributed privately to limited members of the ESCA financial staff. The preliminary draft audit was not intended to be used by Seafirst to increase the amount of a loan. KPMG did not provide a draft to Seafirst, nor was KPMG aware ESCA would do so. KPMG restricted distribution and carefully marked all preliminary materials. Further, Seafirst is outside the class of parties able to bring a negligent misrepresentation claim for the preliminary draft audit because the preliminary draft was not created for Seafirst's benefit and guidance, KPMG did not intend to supply the information to Seafirst, KPMG did not know ESCA would provide the information to Seafirst, and KPMG did not intend to influence Seafirst's loan to ESCA.
We find Seafirst outside the class of persons able to bring a negligent misrepresentation claim based on the preliminary draft audit. Any reliance by Seafirst on the preliminary draft audit is unjustified as a matter of law. The trial court's decision to grant summary judgment on this issue was correct. We decline Seafirst's invitation to address whether RCW 4.22.005 applies to this issue.
Affirmed.
DOLLIVER, SMITH, GUY, MADSEN, ALEXANDER and TALMADGE, JJ., concur.
NOTES
[1] See Laws of 1973, 1st Ex.Sess., ch. 138, § 1, at 949, repealed by Laws of 1981, ch. 27, § 17 (formerly RCW 4.22.010); see also Laws of 1981, ch. 27, § 8, at 117 (RCW 4.22.005); Godfrey v. State, 84 Wash.2d 959, 965, 530 P.2d 630 (1975).